

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

February 15, 1962

Honorable Frank M. Jackson
Executive Secretary
Teacher Retirement System
of Texas
Austin, Texas

Opinion No. WW-1260

Re: Whether the six per cent
contributions to the Teacher
Retirement System should be
based on the salary including
or excluding the deductions
made for the purchase of a
"tax sheltered" annuity under
the provisions of Section
403(b) of the Internal
Revenue Code and related
questions.

Dear Mr. Jackson:

You have requested an opinion from this office upon
the question of:

"1. Should the 6% contributions to the
Teacher Retirement System be based on the
salary including or excluding the deductions
made for the purchase of a 'tax sheltered'
annuity under the provisions of Section 403(b)
of the Internal Revenue Code?"

This office has heretofore commented upon certain
aspects of "tax sheltered" annuity plans, provided for under
the provisions of Section 403(b) of the Internal Revenue
Code, (U.S.C.A., Title 26, par. 403(b), as applicable to
agencies included within the Teacher Retirement System.
See WW-1211 (1961). Under such an arrangement the particular
educational body or agency, as the employer, would divert
a portion of the employee's salary to be used for the purpose
of purchasing or making premium payments upon the employee's
annuity. If the particular employer qualified as an exempt
organization under Section 501(c) (3) of the Internal Revenue
Code (U.S.C.A., Title 26, par. 501(c) (3), the employee would
be able to avail himself of the benefits of a so-called
"tax sheltered annuity", and could deduct the premium pay-
ments upon the annuity from his taxable income. Participation

in such a program on the part of the employee would be voluntary.

This then raises the question of whether the six (6%) per cent constibutions of annual compensation required of members of the Teacher Retirement System, pursuant to the provisions of Article 2922-1, Vernon's Civil Statutes, and specifically Section 9 and Section 10 thereof, would be based upon the salary of the particular teacher before or after the diverting or deducting of a portion of the teacher's salary to be used for the purpose of purchasing or making premium payments upon the teacher's annuity.

Section 9(1) of Article 2922-1, provides in part that:

"In addition to the deposits heretofore required of and made by members on account of service rendered prior to September 1, 1955, each member of the Retirement System shall be required to deposit with the Retirement System five per cent (5%) of his annual compensation, or One Hundred Eighty Dollars ($180.00), whichever is the lesser, for service rendered between September 1, 1955, and September 1, 1957, and six per cent (6%) of his annual compensation for service rendered on and subsequent to September 1, 1957; . . ." (Emphasis added)

Section 1 (16) of Article 2922-1, provides that:

" 'Annual Compensation ' shall mean the full rate of the compensation that is paid by or that would be payable by his employers to a teacher or auxiliary employee if he worked the full normal working time. In cases where the compensation includes maintenance, the State Board of Trustees shall fix the value of that part of the compensation not paid in money. . . ." (Emphasis added)

We are of the opinion that when a teacher voluntarily elects to participate in this so-called "tax sheltered" annuity program, he or she would in

effect be merely agreeing to a modification of his or her contract of employment so that a portion of the annual compensation is diverted to pay for or make premium payments upon an annuity which accrues to the benefit of the teacher. Actually, the teacher would merely be waiving his or her right to receive payment of a part of his or her annual compensation in cash, and in lieu thereof is receiving the benefit of the "tax sheltered" annuity. Although participation in such a program by a teacher would reduce his or her "take home pay", it would not decrease the actual annual compensation received during the school year. Consequently, we are of the opinion that the six per cent contribution required of members of the Teacher Retirement System pursuant to the provisions of Article 2922-1 should be based upon the annual compensation of the teacher including the deductions made for the purchase of a "tax sheltered" annuity.

You also requested an opinion upon the question of:

"2. Should the retirement benefits paid by the Teacher Retirement System be based on the salary including or excluding the deductions made for the purchase of such annuity?"

Retirement benefits under the Teacher Retirement System are based upon the "Average Former Service Compensation" of the particular teacher. Article 2922-1, Section 1(17), provides that:

"'Average Former Service Compensation' shall mean the average <u>annual compensation</u> for such person as a teacher or an auxiliary employee, . . ." (Emphasis added)

For the same reasons set forth in answer to your initial question, as well as the provisions contained in Section 1(17) of Article 2922-1, we are of the opinion that the retirement benefits paid by the Teacher Retirement System should be based upon the particular teacher's annual compensation including any deductions made for the purpose of purchasing or paying the premiums upon a "tax sheltered" annuity.

<u>S U M M A R Y</u>

The six per cent contributions to the Teacher Retirement System should be based upon the

annual compensation of the particular teacher including any deductions made for the purchase of or premium payments upon a "tax sheltered" annuity under the provisions of Section 403 (b) of the Internal Revenue Code.

The retirement benefits paid by the Teacher Retirement System should be based upon the annual compensation of the particular teacher including the deductions made for the purchase of or premium payments upon a "tax sheltered" annuity.

Very truly yours,

WILL WILSON
Attorney General of Texas

By Pat Bailey
Assistant

PB:lg:mkh

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

Arthur Sandlin
Morgan Nesbitt
Grundy Williams
Coleman Gay

REVIEWED FOR THE ATTORNEY GENERAL
BY: Houghton Brownlee, Jr.